[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10735
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-03837-CAP

CAROLYN CARR,
CHARLES M. GIBSON,

Plaintiffs-Appellees,

versus

MATHIEU CADEAU,
Individually,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 9, 2016)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Carolyn Carr and her husband Charles Gibson were walking on the street in

front of their home when Mathieu Cadeau yelled at them to get off the street.  Carr

responded "what, what the fuck" and pointed at her home, saying, "I live here. This is my home." Carr did not realize at the time that Cadeau was a police officer. As she entered her home, Officer Cadeau ran through her garage, grabbed her, and shoved her head into a car. Both Carr and Gibson were arrested and taken to jail. They were released the next day, and the charges against them were later dismissed. The couple soon sued Officer Cadeau, the City of Atlanta, Atlanta's police chief, and the organizers of Flux Festival, a public arts event that was taking place next to where Carr and Gibson were arrested. Carr and Gibson alleged that Officer Cadeau arrested them without either probable cause or a warrant and in retaliation for Carr's speech. All the defendants filed a motion to dismiss, which the district court denied. Officer Cadeau alone appealed that order. We affirm the district court.

## I.

"Government officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Because the defendants here moved to dismiss the complaint, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of

2

the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). The allegations in the complaint are as follows.

Carr and Gibson live in the Castleberry Hill neighborhood of downtown Atlanta. On the evening of October 5, 2013, the street in front of their home was closed to car traffic for a public arts event called the Flux Festival. The City of Atlanta had granted a permit for the event and arranged for off-duty police officers to provide security. Carr and Gibson were returning from the Flux Festival late at night when they heard Officer Cadeau tell them to get off the street. Officer Cadeau did not identify himself as a police officer. At the time Officer Cadeau yelled at them, Carr and Gibson were walking about 20 to 30 feet from the entrance to their home. Carr responded "what, what the fuck." She then pointed at her door and said, "I live here. This is my home." The couple then continued walking toward their home.

When they reached their home, Gibson began to open the garage door by entering a code into a keypad next to the door. As he entered this code, "a bright flashlight was shined into his face." Gibson looked around the street but couldn't

3

see who was holding the light. He then walked through the garage door and hit the button to close the door behind him. Once he entered the garage, he saw that Officer Cadeau was in the garage chasing his wife into their home. Officer Cadeau began "grabbing Plaintiff Carr and twisting her arm violently behind her, shoving her head-first into a parked car in the garage, then dragging her backwards, passing Plaintiff Gibson, out onto the street area." Officer Cadeau then told another police officer to arrest Gibson "while continuing to drag Plaintiff Carr to his police vehicle where she was arrested."

Carr and Gibson were both taken to the Atlanta City Jail and held until the next morning. Both Carr and Gibson were eventually given citations for violations of the City of Atlanta's municipal code. Carr's citation charged her with disorderly conduct while under the influence, and Gibson's charged him with disorderly conduct. When the couple appeared in court to answer their citations, the charges were dismissed. Carr alleges that she suffered loss of liberty, reputational damage, humiliation, physical injuries, and lost wages, as well as medical costs. Gibson alleges that he suffered loss of liberty, reputational damage, humiliation, and emotional distress.

## II.

Carr and Gibson first claim that Officer Cadeau violated their Fourth Amendment rights when he entered their home and arrested them without probable

cause.  Officer Cadeau claims that he is protected by the doctrine of qualified immunity because he had "arguable probable cause" to arrest the couple.  See Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001) ("[A]ll that is required for qualified immunity to be applicable to an arresting officer is arguable probable cause to believe that a person is committing a particular public offense." (quotation omitted)).  At the time Carr and Gibson were arrested, "our binding precedent clearly established . . . that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."  Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1143 (11th Cir. 2007).  Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest."  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).

Officer Cadeau makes several arguments for why he had arguable probable cause to arrest Carr and Gibson.  First, he argues that he had arguable probable cause because Carr and Gibson did not obey his order to get off the street.  This argument fails.  As an initial matter, the complaint alleges that Carr and Gibson did not know who told them to get off the street.  The complaint reveals nothing about whether Officer Cadeau had a valid basis to suspect that Carr and Gibson were intentionally disobeying a police officer.  And even if we could assume that

5

Officer Cadeau had a sufficient basis to believe that Carr and Gibson knew that it was a police officer who was ordering them off the street, the complaint alleged that Carr and Gibson immediately obeyed this order.  Specifically, the complaint said that the couple "walked in a peaceful and lawful manner directly to the automatic garage door adjacent to the sidewalk to the residence."  And Officer Cadeau acknowledges in his appeal brief that he "followed Ms. Carr to her residence after she . . . continued walking toward her home."  We fail to see how Officer Cadeau could have thought Carr and Gibson were disobeying his command to get off the street when he admits that they immediately left the street and walked to their home.  According to Officer Cadeau's own account of the events leading up to the arrest, Carr and Gibson obeyed his command.

Officer Cadeau next says arguable probable cause arose from the fact that Carr replied "what, what the fuck" and "I live here" when told to get off the street.  According to Officer Cadeau, these words show that Carr "*admittedly* refused to comply with his request to get out of the road."  But again, Officer Cadeau admits that Carr and Gibson *did* immediately comply with his "request to get out of the road" by walking into their home.  Also, Carr's comments in no way "admitted[]" that she wouldn't "comply with [Officer Cadeau's] request to get out of the road."  Carr indicated where her home was and then walked out of the road and into her home.  This is entirely consistent with what Officer Cadeau told them to do.  Even

6

if we assumed that a pedestrian's failure to obey a command from an unknown source can serve as the basis for an arrest, the record before us here shows that Carr and Gibson obeyed Officer Cadeau's command.

Also, to the extent Officer Cadeau is arguing that the substance of Carr's verbal "what, what the fuck" and "I live here" reply alone served as a basis to arrest her, this is precisely what Carr and Gibson say violated their First Amendment rights. The First Amendment very clearly protects "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest." City of Houston, Tex. v. Hill, 482 U.S. 451, 462–63, 107 S. Ct. 2502, 2510 (1987); see also id. at 461, 107 S. Ct. at 2509 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Speech is often provocative and challenging. But it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.") (quotation omitted and alteration adopted). Officer Cadeau does not argue that he perceived "a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Id. at 461, 107 S. Ct. at 2509. And nothing in the complaint suggests this to be the case. Carr's verbal response to Officer Cadeau did not establish arguable probable cause to arrest her.

7

Officer Cadeau next says arguable probable cause arose from the fact that Gibson "admits that while Officer Cadeau was attempting to arrest Ms. Carr, he (Mr. Gibson) 'pressed the close button for the garage door, causing the garage door to begin to close.'"  According to Officer Cadeau's appeal brief, this "closed Officer Cadeau into the property" and gave rise to arguable probable cause.  First, it is not clear how Gibson closing his garage door could furnish the probable cause for Officer Cadeau to enter the couple's home or try to seize Carr, since Officer Cadeau did both those things well before Gibson pressed his garage door button.  Even for Gibson's arrest, Officer Cadeau's argument doesn't add up.  Gibson never "closed Officer Cadeau into the property."  By the time Gibson was arrested, Officer Cadeau knew that he was never trapped in the garage.  As the complaint alleges, "the garage door automatically reopened itself" when Officer Cadeau dragged Carr under the closing door.  The record before us does not reveal how Gibson closing his garage door could have furnished arguable probable cause for either Gibson's arrest or Carr's arrest.

Officer Cadeau ordered Carr and Gibson off of a road where they were lawfully walking.  When Carr spoke up in protest, Officer Cadeau chased her into her home without identifying himself, grabbed her, shoved her head against a car, dragged her outside, and then had her husband arrested as well.  At least that's what this complaint alleges.  And we must treat these allegations as true for now.

8

We agree with the district court that a reasonable officer would not have believed there was probable cause for an arrest based on the facts as alleged.

### III.

Carr and Gibson also claim that Officer Cadeau violated their First Amendment right to freedom of speech by arresting them in retaliation for what Carr said to Officer Cadeau. "This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005). Officer Cadeau argues that he did not violate any clearly established law and relies on this language from Redd v. City of Enterprise, 140 F.3d 1378 (11th Cir. 1998):

> Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims. When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.

Id. at 1383.

As an initial matter, Officer Cadeau's argument that Carr simply happened to "be speaking at the time that [s]he [wa]s arrested," id., undermines his separate argument that Carr's verbal response gave him probable cause to arrest her. Officer Cadeau is arguing both that there was no Fourth Amendment violation

9

because Carr's verbal statement was the reason he could arrest her and also that there was no First Amendment claim because that statement was *not* the reason he arrested her. These arguments are in conflict. In any event, Carr and Gibson have not alleged that they simply happened to be speaking at the time they were arrested for otherwise valid reasons. Rather, their claim is that Officer Cadeau chased them into their garage and arrested them in retaliation for Carr's protected speech. This court's precedent provides that "the law was clearly established at the time of [Officer Cadeau's] alleged actions that retaliation against private citizens for exercising their First Amendment rights was actionable." Bennett, 423 F.3d at 1255. We agree with the district court that the complaint alleges a violation of a clearly established First Amendment right.

III.

Carr and Gibson also filed state law claims against Officer Cadeau. Officer Cadeau moved to dismiss these claims based on the Georgia law doctrine of official immunity, which requires proof of "actual malice" or "actual intent to cause injury" in lawsuits against state officials for injuries arising from official conduct. Ga. const. art. 1, sec. II, par. IX(d). Carr and Gibson argue that they have pleaded "actual malice." Indeed the complaint repeatedly alleged that Officer Cadeau acted with "actual malice" and "deliberate intent to do wrong" in assaulting and arresting them. And they also alleged specific facts suggesting that

10

Officer Cadeau chose to assault and arrest them because of what Carr said to him. Further, they alleged facts suggesting that Officer Cadeau had no reason to arrest them other than these comments.  This was enough to survive a motion to dismiss.

IV.

The district court correctly denied the motion to dismiss.  From the face of the complaint, Officer Cadeau is not protected by either qualified immunity under federal law or official immunity under Georgia law.

**AFFIRMED.**