FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**July 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KEVIN DETREVILLE,

    Plaintiff - Appellee,

v.

SERGEY GUREVICH; JULIE
WEINHEIMER,

    Defendants - Appellants.

No. 24-1427
(D.C. No. 1:21-CV-00638-PAB-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **EID**, Circuit Judges.
_____

Kevin Detreville sued under 42 U.S.C. § 1983 based on his arrest for filming in

the entryway of a Denver Police District ("DPD") station. Defendant Officers Sergey

Gurevich and Julie Weinheimer moved for summary judgment based on qualified

immunity. The district court granted summary judgment on Mr. Detreville's unlawful

arrest claim because the officers had arguable probable cause to arrest him. The court

found the officers had waived their qualified immunity defense on his retaliatory arrest,

malicious prosecution, and equal protection claims and denied summary judgment on

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

those claims.  The officers appeal, contending the court erred by not applying its arguable

probable cause determination to grant qualified immunity on the three remaining claims.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's

denial of summary judgment on the retaliatory arrest claim.  We remand the malicious

prosecution and equal protection claims for further proceedings.

## I.    BACKGROUND

### A.  *Factual History*[1]

On November 10, 2019, Mr. Detreville, who is Black, was filming with his cell

phone at the Arie P. Taylor Municipal Center, which houses the DPD 5 station.  The

entryway at DPD 5—fully enclosed except for an open, double doorway—covers the

front door of the station.  A sign stating "POLICE" is located above the open doorway.

A sign inside the entryway and next to the front door of the station said,

"NO VIDEO RECORDING is allowed in the Denver Police District 5 Station without

prior permission from the Chief of Police."  App., Vol. 2 at 332-33; App., Vol. 3 at 558.

The sign cites Colorado Revised Statutes § 18-9-117.

Mr. Detreville stepped into the entryway and filmed for about two minutes.  While

he filmed, Officer Gurevich told him, "We do not allow recording on our property.  If

you do not stop recording, we will have to arrest you."  App., Vol. 3 at 558-59.

---

[1] "Because our interlocutory review of an order denying qualified immunity is typically limited to issues of law, this factual history is drawn from the district court's recitation of the facts."  *Paugh v. Uintah County*, 47 F.4th 1139, 1147 n.2 (10th Cir. 2022) (quoting *Crowson v. Washington County*, 983 F.3d 1166, 1174 n.3 (10th Cir. 2020)).

Officer Weinheimer pointed to the sign prohibiting filming and said, "It's actually written right there." *Id.* at 559. Officer Gurevich again warned him to stop recording. Mr. Detreville responded, "[T]his is my First Amendment right." *Id.* Officer Weinheimer said, "It's not actually." *Id.* The officers arrested Mr. Detreville.

That same day, Officer Gurevich signed a probable cause statement and a summons and complaint against Mr. Detreville. At Mr. Detreville's arraignment on November 12, 2019, a state court magistrate judge found probable cause existed at the time of the arrest and ruled that he could be released on bond.

On November 13, 2019, John Reed, who is white, filmed while inside the DPD 5 station entryway but was not arrested. Officer Gurevich, but not Officer Weinheimer, was working at the station desk that day, from which he could view video of the entryway from security cameras.

Mr. Detreville's case was dismissed on March 2, 2020.

### B. *Section 1983 and Qualified Immunity*

Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

"Persons sued under § 1983 in their individual capacity may invoke the defense of qualified immunity." *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021). "[Q]ualified immunity protects government officials from liability for civil damages insofar as their

3

conduct does not violate clearly established statutory or constitutional rights . . . ."
*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted).

"When a § 1983 defendant raises the qualified immunity defense, the burden
shifts to the plaintiff.  To overcome qualified immunity, a plaintiff must show
(1) facts that demonstrate the officials violated a federal constitutional or statutory
right, which (2) was clearly established at the time of the defendant's conduct,"
*Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (citation omitted)—the two
prongs of qualified immunity.

"A clearly established right is one that is sufficiently clear that every reasonable
official would have understood that what he is doing violates that right." *Mullenix v.
Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted).  "A Supreme Court or
Tenth Circuit decision on point or the weight of authority from other courts can clearly
establish a right . . . ." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir.
2019) (quotations omitted).  The relevant "precedent is considered on point if it involves
'*materially similar conduct*' or applies 'with *obvious clarity*' to the conduct at issue."
*Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quotations omitted).  "[A] case
directly on point" is not necessary if "existing precedent [has] placed the statutory or
constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017)
(per curiam) (quotations omitted).

### C.  *Procedural History*

Mr. Detreville brought four § 1983 claims.  The district court granted summary
judgment to the officers on his Fourth Amendment unlawful arrest claim based on

4

qualified immunity.[2]  It denied summary judgment on his First Amendment retaliatory arrest, Fourth Amendment malicious prosecution, and Fourteenth Amendment equal protection claims.[3]

On the unlawful arrest claim, the district court said that the officers "had no probable cause to believe that Mr. Detreville was violating the directive on the sign because it is undisputed that Mr. Detreville was outside of the Station's door when he was recording."  App., Vol. 3 at 572; *see also id.* at 589.  But the court said the officers "had arguable probable cause to arrest Mr. Detreville under Colo. Rev. Stat. § 18-9-117." *Id.* at 578; *see also id.* at 589.  It said "an officer could have made a reasonable mistake that the phrase 'in' the Station included the mostly enclosed physical structure attached to the front of the building," so "an officer could have reasonably believed that the sign prohibited video recording in the entryway." *Id.* at 576-77.  Based on this arguable probable cause finding, the court granted the officers qualified immunity on the unlawful arrest claim.

The district court determined that a reasonable jury could find constitutional violations on the retaliatory arrest, malicious prosecution, and equal protection claims.

---

[2] Mr. Detreville moved for partial summary judgment on three claims against Officer Gurevich, which the district court denied in its entirety.

[3] Mr. Detreville brought his Fourth Amendment malicious prosecution claim against only Officer Gurevich.  He brought the remaining claims against both officers. On the equal protection claim, the district court granted summary judgment to Officer Weinheimer and denied it to Officer Gurevich.  Only the latter ruling is at issue in this appeal.

But it did not address the clearly-established-law prong of qualified immunity on those claims, finding the officers "waived any qualified immunity argument." *Id.* at 588 n.28. It said that even though the officers in their reply brief argued that "they are entitled to qualified immunity on all of [Mr. Detreville]'s claims," they "did not invoke qualified immunity" on these three claims in their opening brief. *Id.*

## II. **DISCUSSION**

In the following discussion, we address:

(A) Whether we have interlocutory appellate jurisdiction to review the district court's denial of summary judgment on the retaliatory arrest, malicious prosecution, and equal protection claims. We do because the officers adequately asserted a qualified immunity defense to those claims and the district court effectively rejected it.

(B) Whether we can review the district court's determination that the officers had arguable probable cause to arrest Mr. Detreville. We cannot because Mr. Detreville failed to cross appeal on that issue.

(C) Whether the district court erred in denying summary judgment to the officers. It erred in failing to address the clearly-established-law prong of qualified immunity on the three remaining claims. The court should have granted qualified immunity to the officers on the retaliatory arrest claim based on its finding of arguable probable cause for the officers to arrest Mr. Detreville. But we remand for the district court to evaluate the clearly-established-law prong on the malicious prosecution and equal protection claims. We therefore reverse in part and remand in part.

### A. *Interlocutory Appellate Jurisdiction and Waiver*

1. **Legal Background**

We have appellate jurisdiction to review "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "Ordinarily, orders denying summary judgment

6

are 'not appealable final [decisions] for purposes of . . . § 1291.'" *Tachias v. Sanders*, 130 F.4th 836, 841-42 (10th Cir. 2025) (quoting *Sawyers*, 962 F.3d at 1281).

"The denial of qualified immunity to a public official, however, is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." *Id.* (quoting *Sawyers*, 962 F.3d at 1281); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "Abstract issues of law include whether the law was clearly established at the time of the alleged violation." *Simpson v. Little*, 16 F.4th 1353, 1359-60 (10th Cir. 2021).

"[A] finding of waiver is a legal determination which enables appellate review of the denial of qualified immunity." *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 912-13 (7th Cir. 2011); *see also Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) (reviewing de novo a denial of qualified immunity based on waiver); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 575 (5th Cir. 2009) (same); *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 749-50 (6th Cir. 2015) (exercising interlocutory appellate jurisdiction and holding the district court did not abuse its discretion in finding the defendants waived their qualified immunity defense).

2. **Application**

We have appellate jurisdiction because the district court denied qualified immunity on the retaliatory arrest, malicious prosecution, and equal protection claims. The court determined a reasonable jury could find a constitutional violation on each of those claims—a ruling on prong one of qualified immunity—but it said the officers had "waived" their qualified immunity defense on those claims. The court then failed to

7

address the clearly-established-law prong of qualified immunity and denied summary judgment. But it should have addressed prong two because the officers did not waive qualified immunity on those claims.

In district court, the officers argued they were "entitled to qualified immunity and judgment in their favor." App., Vol. 2 at 252-59. The officers (1) stated the standard for qualified immunity, (2) explained that plaintiffs bringing § 1983 claims based on a warrantless arrest must show the arresting officers lacked actual or arguable probable cause, and (3) argued why Mr. Detreville could not make that showing. *Id.* In response to Mr. Detreville's assertion that they raised qualified immunity only on the unlawful arrest claim, the officers said they "are entitled to qualified immunity" on "each of [Mr. Detreville]'s claims." App., Vol. 3 at 545 & n.1. The officers sufficiently raised a qualified immunity defense. *See Sawyers*, 962 F.3d at 1282 ("When a § 1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff."); *Est. of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) ("When a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that [the defendant is] immune from suit.'" (quotations omitted)).

The district court thus erred by ruling that the officers waived their qualified immunity defense on the retaliatory arrest, malicious prosecution, and equal protection claims. By finding the defense waived, the court denied qualified immunity when it denied summary judgment on these claims, setting the predicate for our interlocutory appellate jurisdiction. *See Eddy*, 256 F.3d at 209; *Pasco*, 566 F.3d at 575; *Henricks*, 782 F.3d at 749; *Hernandez*, 634 F.3d at 912-13.

8

B. *Review of Arguable Probable Cause*

Mr. Detreville argues we "should exercise pendent appellate jurisdiction over [his] unlawful arrest claim because the requisite analysis (arguable probable cause) of that claim is inextricably intertwined with that requested of the same issue in regards to the First Amendment and malicious prosecution claims."  Aplee. Br. at 3; *see also id.* at 6-7.

We cannot exercise pendent appellate jurisdiction as Mr. Detreville requests because he failed to file a cross appeal.  *See Snell v. Tunnell*, 920 F.2d 673, 676 (10th Cir. 1990).  A party must file a cross appeal "when it seeks to 'enlarge its own rights' or 'lessen the rights of its adversary.'"  *Crow Tribe of Indians v. Repsis*, 74 F.4th 1208, 1217 (10th Cir. 2023) (alterations adopted) (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)); *see also Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("[A]n appellate court may not alter a judgment to benefit a nonappealing party.").

That is what Mr. Detreville is asking here.  He seeks a ruling on appeal that the officers lacked arguable probable cause to arrest him, a ruling that would overcome qualified immunity on the unlawful arrest claim and enable him to pursue that claim at trial.  *See Segura v. Jones*, 259 F. App'x 95, 99 (10th Cir. 2007) (unpublished) (refusing to consider the appellee's arguments regarding her unlawful seizure claim, which the district court dismissed at summary judgment, because she "failed to cross-appeal" and was "attempting to enlarge her rights");[4] *see also Jackson v. Humphrey*, 776 F.3d 1232,

---

[4] We cite unpublished opinions in this order and judgment for their persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

1239-40 (11th Cir. 2015) (refusing to consider, under the cross-appeal rule, the appellee's challenge to the district court's grant of qualified immunity because it "would both enlarge her rights and lessen those of the Corrections officials"); *Doss v. Helpenstell*, 626 F. App'x 453, 456 n.3 (5th Cir. 2015) (unpublished) (same).

Because Mr. Detreville failed to file a cross appeal challenging the district court's conclusion that the officers had arguable probable cause to arrest him, we cannot review that determination to the extent it applies to any of his claims. *See Repsis*, 74 F.4th at 1217; *Snell*, 920 F.2d at 676.

### C. *Summary Judgment on the Retaliatory Arrest, Malicious Prosecution, and Equal Protection Claims*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We apply "the same legal standard as the district court." *Sawyers*, 962 F.3d at 1282 (quotations omitted).

"Within this court's limited jurisdiction, we review the district court's denial of a summary judgment motion asserting qualified immunity de novo." *Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013). We have jurisdiction to assess "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation" and "(2) whether that law was clearly established at the time of the alleged violation." *Est. of Valverde ex rel. Padilla v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020) (quoting *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013)). "[W]e are permitted to exercise our sound discretion in deciding

10

whether to bypass the first question and proceed directly to the second." *Lynch v. Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) (citing *Pearson*, 555 U.S. at 236-43).

On interlocutory appeal, "[w]e cannot review a district court's factual findings, including the existence of a genuine issue of material fact or whether the plaintiff's evidence sufficiently supports a particular factual inference." *Works v. Byers*, 128 F.4th 1156, 1161 (10th Cir. 2025) (citing *Packard v. Budaj*, 86 F.4th 859, 864 (10th Cir. 2023)); *see also Sawyers*, 962 F.3d at 1281.[5]

The district court erred when it failed to address the clearly-established-law prong of qualified immunity on the three remaining claims. In light of this error, we may remand the clearly-established-law issue to the district court, *see Kerns v. Bader*, 663 F.3d 1173, 1182 (10th Cir. 2011), or we may resolve it in this appeal when it presents a "pure matter of law," *Cox v. Glanz*, 800 F.3d 1231, 1246 n.7 (10th Cir. 2015). For the retaliatory arrest claim, we choose the latter course and reverse summary judgment. But for the malicious prosecution and equal protection claims, we remand for the district court to address the clearly-established-law issue.

## 1. Retaliatory Arrest Claim

The district court denied the officers' summary judgment motion on the retaliatory arrest claim, finding "that a reasonable jury could conclude that defendants' decision to

---

[5] None of the three exceptions to this general rule applies here. *See Works*, 128 F.4th at 1161 ("We may review the factual record de novo when (1) the district court fails to identify the particular conduct of the alleged constitutional violation, (2) the record blatantly contradicts the district court's factual finding, or (3) the district court committed legal error on the way to a factual determination.").

11

arrest Mr. Detreville was 'substantially motivated' by plaintiff's exercise of his First Amendment speech rights." App., Vol. 3 at 591. It did not address the second prong of qualified immunity.

    a. *Legal background*

      i. Prong 1: Constitutional violation

For a First Amendment retaliation claim, a plaintiff must show that (1) he "engaged in constitutionally protected activity"; (2) "the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendants' adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (alterations adopted and quotations omitted). "And when pursuing a claim for retaliatory arrest against a law-enforcement officer, a plaintiff must [show] either that the officer lacked probable cause to arrest or that the officer historically has not arrested similarly situated people who were not engaged in the same type of speech." *Frey v. Town of Jackson*, 41 F.4th 1223, 1232 (10th Cir. 2022) (citing *Nieves v. Bartlett*, 587 U.S. 391, 405-08 (2019)).

      ii. Prong 2: Clearly established law

Although we have not addressed "whether arguable probable cause would trigger qualified immunity on [a First Amendment] retaliation claim" under the clearly-established-law prong, *Hoskins v. Withers*, 92 F.4th 1279, 1294 n.14 (10th Cir. 2024), the circuits that have addressed the issue have granted officers qualified immunity

12

on a retaliatory arrest claim when they had arguable probable cause for the arrest, *see Somers v. Devine*, 132 F.4th 689, 696-97 (4th Cir. 2025); *Roy v. City of Monroe*, 950 F.3d 245 (5th Cir. 2020); *Novak v. City of Parma*, 33 F.4th 296, 305 (6th Cir. 2022); *Just v. City of St. Louis*, 7 F.4th 761, 768-69 (8th Cir. 2021); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998); *see also Rupp v. City of Buffalo*, 91 F.4th 623, 642-43 (2d Cir. 2024).

b. *Application*

The district court erred in denying the officers summary judgment on the First Amendment retaliatory arrest claim because it failed to address prong two of qualified immunity.

For a retaliatory arrest claim, a plaintiff must show "the absence of probable cause for the arrest." *Nieves*, 587 U.S. at 402. We agree with the circuits holding that when probable cause is lacking at prong one, arguable probable cause for an arrest entitles a defendant to qualified immunity at prong two. *See, e.g.*, *Somers*, 132 F.4th at 696-97 (noting that retaliatory arrest, unlawful arrest, and malicious prosecution "all implicate effectively the same right" and "whether this right is 'clearly established' turns on the question of whether [the officer] was objectively reasonable in believing that probable cause existed to arrest" the plaintiff).[6]

---

[6] Mr. Detreville appears to concede this point, stating "[a]rguable probable cause is generally the benchmark for qualified immunity in claims for unlawful arrest, First Amendment retaliation, and malicious prosecution." Aplee. Br. at 7.

The district court's arguable probable cause determination means that it was not clearly established that arresting Mr. Detreville would violate his right to be free from First Amendment retaliatory arrest. *See Reichle v. Howards*, 566 U.S. 658, 665 (2012) (noting the Supreme Court has never held there is a "right to be free from a retaliatory arrest that is otherwise supported by probable cause"). The officers were thus entitled to qualified immunity, and we reverse the district court's denial of summary judgment on this claim.[7]

2. **Malicious Prosecution Claim**

The district court denied the officers' summary judgment motion on the malicious prosecution claim against Officer Gurevich, determining that a reasonable jury could find a constitutional violation. App., Vol. 3 at 592-93. It did not address the second prong of qualified immunity. We remand for it to do so.

a. *Legal background*

Prong 1:  Constitutional violation

For a Fourth Amendment malicious prosecution claim, a plaintiff must show that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the

---

[7] Because we reverse on this ground, we do not consider the officers' alternative prong one argument that Mr. Detreville "cannot prove that the Officers would not have arrested him but for harboring 'retaliatory animus' for [Mr. Detreville] exercising his First Amendment rights." Aplt. Br. at 20. As the Supreme Court has explained, a defendant is entitled to qualified immunity on prong two alone if the plaintiff fails to show the right at issue was clearly established. *See Pearson*, 555 U.S. at 236; *see also Lynch*, 703 F.3d at 1159.

original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

Prong 2:  Clearly established law

"A key element of the § 1983 malicious prosecution claim requires 'no probable cause supported the original arrest, continued confinement, or prosecution.'" *Shrum v. Cooke*, 60 F.4th 1304, 1310 n.3 (10th Cir. 2023) (quoting *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017)).  If probable cause is lacking, "we then must determine whether [the plaintiff]'s rights were clearly established, which we approach by asking whether the officers *arguably* had probable cause." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).[8]  "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022) (quoting *Stonecipher*, 759 F.3d at 1141).

b. *Application*

The officers do not challenge the district court's determination that a reasonable jury could find a § 1983 malicious prosecution violation.  They instead argue the court erred in denying summary judgment to Officer Gurevich because they asserted qualified

---

[8] Again, Mr. Detreville appears to concede this point.  *See* Aplee. Br. at 7 ("Arguable probable cause is generally the benchmark for qualified immunity in claims for unlawful arrest, First Amendment retaliation, and malicious prosecution.").

immunity and the court failed to address the clearly-established-law prong of that defense. The officers further contend (1) that had the court done so, it should have granted summary judgment to Officer Gurevich based on its earlier determination that the officers had arguable probable cause for the arrest, and (2) that we should reverse on that ground.

We agree the district court erred in failing to address prong two of qualified immunity. But as we explain below, an evaluation of whether there was arguable probable cause on the malicious prosecution claim may not be limited to simply applying the district court's arguable probable cause determination for the initial, warrantless arrest, which focused on the facts known to the officers at the time of the arrest. "Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only '[a]fter the institution of legal process.'" *Wilkins*, 528 F.3d at 798 (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008)). "[A] plaintiff can challenge the institution of legal process as wrongful" when "arrested without a warrant" by challenging "the probable cause determination made during the constitutionally-required probable cause hearing." *Id.*[9]

The officers arrested Mr. Detreville without a warrant on November 10, 2019. Officer Gurevich signed a probable cause statement and submitted a summons and

---

[9] When a person is arrested without a warrant, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). This is sometimes called a "*Gerstein* hearing." *See Wilkins*, 528 F.3d at 802.

complaint the same day. During Mr. Detreville's arraignment on November 12, 2019, a state court magistrate judge found probable cause for the arrest. Whether there was probable cause or arguable probable cause for purposes of Mr. Detreville's malicious prosecution claim depended on the evidence presented at that arraignment. *See Wilkins*, 528 F.3d at 802 ("The Fourth Amendment in the context of a malicious prosecution claim deals with *judicial determinations* of probable cause, either at the warrant application stage or during a *Gerstein* hearing following a warrantless arrest."). The record is sparse, however, on how the judge made that determination. *See* App., Vol. 1 at 146 (stating only that the court "finds probable cause existed at time of arrest").

The district court found that "the evidence does not indicate that Officer Gurevich knowingly falsified any information in the probable cause statement," App., Vol. 3 at 587 n.26, but it did not address whether any material, exculpatory facts were omitted from the statement. *See Bledsoe*, 53 F.4th at 615; *Taylor v. Meacham*, 82 F.3d 1556, 1563-64 (10th Cir. 1996). On appeal, Mr. Detreville argues as an alternative ground to affirm that inclusion of "false statements" and omission of "material facts" in Officer Gurevich's probable cause statement "further reinforces the unconstitutionality of the arrest." Aplee. Br. at 38-40.[10]

---

[10] When information has been knowingly or recklessly omitted from an affidavit, "the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (quotations omitted). An officer has qualified immunity on a malicious prosecution claim arising from an arrest affidavit when the court, having considered the

Whether and how Mr. Detreville's arguments on malicious prosecution affect the arguable probable cause issue is better left for the district court to consider. *See Kerns*, 663 F.3d at 1182; *see also Moses-EL v. City & County of Denver*, No. 20-1102, 2022 WL 1741944, at *14 (10th Cir. May 31, 2022) (unpublished) ("[W]e cannot evaluate [the state judge's probable cause determination] here because Moses-EL has not furnished the full bases presented to the state judge, or the grounds the judge relied on to find probable cause . . . ."). As previously explained, because Mr. Detreville did not cross appeal, we must accept the district court's conclusion that the officers had arguable probable cause to arrest him without a warrant. *See Repsis*, 74 F.4th at 1217; *Snell*, 920 F.2d at 676. But doing so does not answer whether Officer Gurevich's probable cause statement—or other evidence at Mr. Detreville's arraignment—established arguable probable cause that would defeat Mr. Detreville's malicious prosecution claim based on qualified immunity. We therefore remand for the district court to address the clearly-established-law prong of qualified immunity on the malicious prosecution claim.

3.  **Equal Protection Claim**

The district court denied summary judgment to Officer Gurevich on the equal protection claim, finding that a reasonable jury could conclude that he saw Mr. Reed filming in the station entryway on November 13, 2019; he arrested Mr. Detreville with a

---

omitted information, finds the affidavit still gives rise to arguable probable cause. *See Bledsoe*, 53 F.4th at 615.

discriminatory purpose; and the arrest had a racially discriminatory effect. App., Vol. 3 at 596-98.[11] Again, the court did not address the second prong of qualified immunity.

   a. *Legal background*

For a Fourteenth Amendment selective-enforcement equal protection claim, a plaintiff must show that "the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003); *see also Wayte v. United States*, 470 U.S. 598, 608 (1985); *United States v. Furman*, 31 F.3d 1034, 1037 (10th Cir. 1994). The discriminatory-purpose element requires a showing that discriminatory intent was "a motivating factor in the decision" to enforce the law against the plaintiff. *Marshall*, 345 F.3d at 1168. "To satisfy the discriminatory-effect element, one who claims selective enforcement 'must . . . make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested . . . for the offense for which the [plaintiff] was arrested . . . .'" *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (alterations and quotations omitted).

---

[11] As noted earlier, the district court granted summary judgment to Officer Weinheimer on the equal protection claim, so our review is limited to the claim against Officer Gurevich.

19

b. *Application*

i.   Constitutional violation

On appeal, the officers challenge whether Mr. Detreville can show that

Officer Gurevich arrested him with discriminatory intent.  Aplt. Br. at 21.

The district court's factual findings support an Equal Protection Clause violation.

The court found that a reasonable jury could infer that Officer Gurevich saw Mr. Reed

recording in the entryway.  App., Vol. 3 at 596-97.[12]  For discriminatory effect, it said a

reasonable jury could find that Mr. Reed, a similarly-situated white person, could have

been but was not arrested for the same offense as Mr. Detreville—filming in the same

location at the DPD 5 station.  *Id.* at 597 (citing *United States v. James*, 257 F.3d 1173,

1179 (10th Cir. 2001)).  For discriminatory purpose, the district court said a reasonable

jury could infer that race was a "motivating factor in the decision" to arrest, even if

Officer Gurevich had a reasonable belief that filming in that location was prohibited.  *Id.*

(quoting *Alcaraz-Arellano*, 441 F.3d at 1264).  As previously noted, on interlocutory

---

[12] The officers cannot challenge this finding because we lack jurisdiction to review it.  *See Works*, 128 F.4th at 1161.  Although on interlocutory appeal we may "assess[] the facts de novo" when "the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record," *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1164 (10th Cir. 2021) (quotations omitted), we have "decline[d] to extend the exception where the source of the contradictory testimony is the defendant himself," *id.* at 1165.  Here, the officers argue "[t]here is simply no evidence Officer Gurevich saw the Caucasian man filming," Aplt. Reply Br. at 11, but they cite only to Officer Gurevich's testimony that he did not see Mr. Reed, despite his working at the station's desk where he could view the security cameras that recorded where Mr. Reed was filming.  *See* App., Vol. 3 at 596-97.  We thus "must accept the version of facts the district court assumed true."  *Vette*, 989 F.3d at 1162.

appeal, we lack jurisdiction to second-guess these factual conclusions. *Sawyers*, 962 F.3d at 1281. They show a selective-enforcement equal protection violation. *See Alcaraz-Arellano*, 441 F.3d at 1264; *see also Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (holding plaintiff stated an equal protection sexual orientation discrimination claim when officers thought she was a lesbian and arrested her for drunk driving but did not arrest a "similarly situated . . . or, indeed, far drunker" individual they thought was heterosexual).

ii. Clearly established law

The officers argue that because "[O]fficer Gurevich had qualified immunity for the arrest, he is entitled to qualified immunity on" the equal protection claim. Aplt. Br. at 21. We disagree.

Unlike the retaliatory arrest and malicious prosecution claims, lack of probable cause to arrest is not an element of an equal protection selective-enforcement claim. *See Marshall*, 345 F.3d at 1166; *see also Nieves*, 587 U.S. at 415 (Gorsuch, J., concurring) (stating "the courts of appeals have recognized that § 1983 plaintiffs alleging racially selective arrests in violation of the Fourteenth Amendment don't have to show a lack of probable cause, even though they might have to show a lack of probable cause to establish a violation of the Fourth Amendment" (collecting cases)); *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) ("Most of Puller's claims (except his equal protection claim) require us to consider whether Baca had probable cause to arrest Puller."); *Stemler*, 126 F.3d at 872 ("The courts have long held that a selective enforcement claim may be available even where there is probable cause for

21

prosecution.").[13]  It follows that arguable probable cause does not establish qualified immunity on an equal protection claim alleging a racially motivated arrest.

As noted, the district court erred in failing to address prong two of qualified immunity on the equal protection claim.  We decline to consider further whether Mr. Detreville's right to equal protection against racially selective law enforcement was clearly established when the officers arrested him.  The parties did not brief this issue in district court or on appeal.  *See Kerns*, 663 F.3d at 1182 (remanding for further proceedings when the district court did not analyze prong two and "the briefing on appeal [was] less than entirely satisfactory"); *see also Quinn v. Young*, 780 F.3d 998, 1016 (10th Cir. 2015) (remanding for the district court to "explicitly assess whether the Officers may avail themselves of qualified immunity" and "rule on the claims anew").[14] We therefore remand for the district court to consider this issue.

---

[13] At oral argument, the officers "agree[d]" that an equal protection claim may survive despite a finding of probable cause (or lack thereof).  *See* Oral Arg. at 11:18-11:47.

[14] We note the Supreme Court and this court have recognized that selective law enforcement based on race violates equal protection.  In *Whren v. United States*, 517 U.S. 806 (1996), the Court said, "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Id*. at 813.  It further said "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." *Id.*  In *Marshall*, we reiterated that "[r]acially selective law enforcement violates this nation's constitutional values at the most fundamental level; indeed, unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendment."  345 F.3d at 1167.

### III.  **CONCLUSION**

We reverse the district court's denial of summary judgment on the retaliatory arrest claim.  We remand the malicious prosecution and equal protection claims for further proceedings.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge